**Norman HANDSHEAR, Appellant,**

v.

**Maley HANDSHEAR, Respondent.**

No. 54909.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 25, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 1989.

David A. Horwitz, St. Louis, for appellant.

Kaveney, Beach, Bond, Ullom & Burcke, Douglas R. Beach, St. Louis, for respondent.

KAROHL, Judge.

Husband-father appeals some provisions of a dissolution decree entered after the parties were married just over eight years. The provisions of the decree relevant to his appeal are as follows:

3. Custody of the two minor children [daughter and son] is awarded to Respondent, Maley Handshear. Petitioner shall have right to exclusive temporary custody for a period of 10 consecutive weeks between June 1st and September 1st of each year. During each period of custody, the non-custodial parent shall have exclusive temporary custody on alternate week-ends from 6:00 P.M. to 9:00 P.M. Sunday, every Wednesday night from 5:00 P.M. to 9:00 P.M., on alternating holidays and childrens' birthdays. Each parent is entitled to take children out of town on vacation or otherwise for a period not to exceed two weeks, so long as said trip does not interfere with school functions. Any loss of custody this may cause to either party will be compensated at the earliest time available thereafter. If either party goes out of town without

children during the time they have physical custody, the other shall have first choice in whether to assume physical custody during the absence of the custodial parent. Such periods shall not be "deducted" from the period of physical custody to which each parent is entitled, unless it coincides with dates to which they are entitled to custody. Each party is permitted reasonable private phone contact while in the other's custody. All terms herein are to be liberally construed in favor of parental contact with the children by either parent.

\* \* \* \* \* \*

7. Petitioner is ordered forthwith to designate each of the minor children as irrevocable beneficiary of a life insurance policy aided through work or otherwise with face value of $75,000.00.

\* \* \* \* \* \*

9. Respondent will be permitted to continue living in the marital residence at 14137 Westernmill Drive until the first of the following events occur:

a) Death or remarriage of Respondent.

b) 21st birthday of [son], or emancipation.

c) Home is sold.

When the house is sold, the net proceeds thereof will be divided, after deducting all costs of sale, deed(s) of trust, liens, etc., 70% to Respondent, and 30% to Petitioner. While respondent is living in home, the deed(s) of trust, principle, interest, taxes, and insurance shall be paid 70% by Respondent and 30% by Petitioner. The same liability shall attach to the parties for maintenance and repairs, except that no repairs in excess of $200.00, and no future encumbrance of the property shall be permitted without the written consent of both. Respondent shall be liable for payment of all utilities.

■ We find the court erred in requiring husband to make his children irrevocable beneficiaries of a life insurance policy. Wife concedes that this court and others have held that it is not a legal requirement for a parent to support children after death of the parent. "A parent in Missouri is not required to support his children after the parent dies." *Metropolitan Life Insurance Company v. Alcorn,* 674 S.W.2d 115, 115 (Mo.App.1984). Any attempt to order child support through life insurance is void. *Id.* at 116. The present order is defective for the additional reason that it would extend the father's obligation to support the children beyond their emancipation. The provisions of paragraph 7 of the decree misapply the law and are ordered withdrawn.

■ Husband's principal complaint is that there was no substantial evidence to support an award of custody to wife-mother. We find there was substantial evidence to support the custody provisions of the decree and that the court did not erroneously declare or apply the law regarding custody disputes. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We also find the evidence supports the finding of fact that the best interests of the children, a daughter age six and a son age four, would be served by an award of permanent custody to mother with extensive, liberal temporary custody for the father. We noted in *Goldberg v. Goldberg,* 691 S.W.2d 312, 315 (Mo.App.1985) that the paramount consideration remains the best interest and welfare of the child.

The bulk of husband's evidence is that he was the superior parent. This differs from evidence wife is unable or unfit. His evidence is tainted by the fact that on the date he filed the petition for dissolution, without advance notice, he took the two children from the family home to live with him at his sister's home. He notified his wife of these acts by leaving a note at the family home. During the pendency of this dissolution case in the circuit court, April, 1986 to April, 1988, husband had primary custody. He rigidly controlled and limited mother's temporary custody. Father is of one religious belief and mother of another. During the marriage neither parent was active in religious practices for themselves or with the children. However, the religious difference created a past and continuing controversy. On this account, and oth-

ers, the court found the parties were seriously incompatible and incapable of being joint custodians. The court found they were both capable and loving parents.

Both parties offered the testimony of expert and lay witnesses in support of claims that they were and would be good parents. There is an absence of evidence for the proposition that either was unable, unwilling or incapable of parenting the children. Husband claims wife is unfit by reason of an extramarital affair. The record reflects evidence of an extra-marital affair by wife. However, there was no evidence that the children were in any manner involved or that they may have been influenced by such past conduct. Directly, there was no evidence that the moral environment of the children living with their mother would be adversely affected by reason of a past indiscretion. *See, Ryan v. Ryan,* 652 S.W.2d 313, 315 (Mo.App.1983).

The question is whether there was substantial evidence from which the trial court could find and did find that it was in the best interests of the children for their mother to have custody. We find such evidence in the record. Her testimony supports the award. In addition, the court noted the restrictive or oppressive conduct of husband-father during the separation, while he had custody, and concluded wife "will much more generously share the children's life and welfare with [husband], than he has been able to do with her." Dr. Wells Hivley, Ph.D., a psychologist, concluded that the children were coping well, and that each parent is unusually responsible. He also found the children were bonded to each of the parents, and that they have a warm, tender, and affectionate relationship with their mother. A number of witnesses testified that mother was very active with the children in their interests prior to husband's removing the children from the family home at the time he filed the petition for dissolution. Husband's evidence regarding custody focused primarily on his superior dedication to the welfare of the children and his ability to provide for them. Such evidence did not require the trial court to draw the conclusions urged by husband.

We have noted, generally, the available evidence. Particularly, on cross-examination, husband's attorney asked wife if she felt she was a fit parent to have custody. She told the court that she was. She denied any personal problems that would affect her ability to be a parent. On cross-examination she also opined that she was "a fit and proper parent because she [felt] that [she] can give the time and attention to the children." She asserted she had a positive environment and a warm and loving and open relationship with the children. In addition, Dr. Hivley was asked to express his opinion, to a reasonable degree of psychological certainty, whether or not mother would be able to properly care for the children. He answered, "[t]hat she certainly would, and that that would be in their long-term best interest." Finally, husband's expert, Dr. Amanat, concluded that it would be in the best interest of the children to be with their father. However, the trial court was impressed with Dr. Amanat's testimony that father "even though he would try to suppress it, would be rigid, angry, and uncomfortable" if custody were given the mother. The court considered this testimony a revelation regarding father and a reason to discount the conclusion of Dr. Amanat as it was founded on a "shaky basis." The court found Dr. Amanat an impressive witness but tentative, in manner if not in actual words, concerning the ultimate questions of custody.

The troubling and difficult decision to award custody of the children to their mother is supported by substantial evidence. The same may be said regarding a possible award of custody to father. However, it was for the trial court to determine what was in the best interests of the children and it is for this court to determine whether there was evidence to support the decree. We find that there was. Point denied.

Husband also claims the court erred in leaving title to the family home in joint names because there were no unusual circumstances to support an arrangement for continued ownership as tenants in common,

followed by a delayed sale. He also contends that the court abused its discretion in requiring him to pay a portion of the mortgage, insurance and maintenance on the former family home because (a) such payments are a form of maintenance and wife waived maintenance, and, (b) such payments are included in an award of child support. The trial court recognized that wife-mother would be residing with the children in the former family home. The provisions of the decree are apparently intended to make that possible.

■ The trial court is required by § 552.330 RSMo 1986 to divide all marital property in such proportions as the court deems just after considering all relevant factors. The decree orders a delayed sale and a distribution of 70% of net proceeds to wife and 30% to husband. During the period of delay wife has exclusive privilege of residence, subject to provisions when sale must occur.

This court has approved and affirmed decrees in substantially the same form. In *Buchanan v. Graf*, 671 S.W.2d 379 (Mo.App.1984), we upheld the validity of a dissolution decree which granted wife exclusive use of a marital residence for herself and children with a delayed sale and division of proceeds. We found the language divided the marital property and created an undivided one-half, tenant in common interest in each spouse. The additional provisions of the decree relating to the parties liabilities for mortgage payments, maintenance expenses, taxes and insurance, simply added to the common law rights and duties of the parties' as tenants in common. *Id.* at 382. To the same effect, *see also, Cook v. Cook*, 759 S.W.2d 891, 893 (Mo.App.1988) and *Murray v. Murray*, 614 S.W.2d 554, 556 (Mo.App.1981). The Supreme Court of Missouri in *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 65 (Mo. banc 1983) did not reject this view.

We recognize cases cited by husband, decided by the Missouri Court of Appeals, Western District, may conflict with our decision and previous decisions of this court. We find the decisions in *Hagar v. Hagar*, 722 S.W.2d 358 (Mo.App.1987), *In re: The Marriage of Farquhar*, 719 S.W.2d 456 (Mo.App.1986), and, *Buthod v. Buthod*, 624 S.W.2d 119 (Mo.App.1981) not controlling.

■ Husband complains the court abused its discretion in ordering him to pay a portion of the mortgage, insurance and maintenance on the real estate because such payments are either maintenance or child support and wife waived maintenance and the court otherwise provided child support. For several reasons we reject this argument. First, these provisions merely add to husband's common law right and duty as a tenant in common. *Buchanan v. Graf*, at 382. Second, such payments are not necessarily maintenance. Third, the provisions dividing the real estate and ordering a delayed sale provide a home for the children. The provision for periodic child support may include and does not necessarily exclude consideration of the availability of a residence for the children with a custodial parent. There is no claim by husband that the child support, including without deciding that payments regarding the real estate until sale are not child support, is excessive of husband's ability to pay. According to the evidence his earnings were in excess of $70,000 per year. Husband's claim that the court abused its discretion in requiring payments to protect the real estate and provide a home for the children is denied.

The judgment of dissolution is affirmed in part and reversed in part. We reverse the provisions regarding husband's life insurance. All other provisions of the decree are affirmed. Costs are assessed against appellant, husband.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.