Clifford R. HATCHETTE, Appellant,

v.

Jamie L. HATCHETTE, Respondent.

Nos. WD 58633, WD 59148.

Missouri Court of Appeals, Western District.

Oct. 23, 2001.

Hugh F. O'Donnell, III, Kansas City, for appellant.

Debra L. Snoke, Kansas City, for respondent.

Before SPINDEN, C.J., HOWARD and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Clifford Hatchette appeals an Amended Judgment of Dissolution of Marriage, claiming the trial court erred in the division of marital property and in awarding child support, maintenance, and attorney's fees on appeal. We affirm the judgment.

## Factual and Procedural History

Clifford Hatchette (Husband) and Jamie Hatchette (Wife) were married in December 1987. Three children were born of their marriage: Caitlin, born May 16, 1989; Cassidy, born August 22, 1991; and Casey, born March 20, 1994. The parties separated in December 1997, but continued residing together in the marital home.

On January 12, 1998, Husband filed a Petition For Dissolution Of Marriage in the Jackson County Circuit Court. Upon motion of Wife, the court ordered Husband to pay $1,100.00 per month in temporary maintenance. The order also required Husband to pay household expenses, including the mortgage, utilities, property taxes, insurance, insured medical costs and most of the parties' credit card bills.

The trial was held February 2, 2000. On April 11, 2000, the court entered a Judgment of Dissolution of Marriage, which it amended on May 10, 2000. The Amended Judgment awarded the parties joint legal custody of the children with Wife as the primary physical custodian. Husband was ordered to pay Wife $987.00 per month in child support and $1,200.00 per month for maintenance. The marital property and debts, net valued at $190,904.00, were divided 58% to Wife and 42% to Husband.

Husband filed a Notice of Appeal, and Wife motioned the trial court for attorney's fees on appeal. Husband opposed the motion. On September 12, 2000, the trial court entered a judgment awarding Wife $5,000.00 in attorney's fees on appeal.

Husband appeals the Amended Judgment of Dissolution of Marriage and the Judgment for Attorney's Fees on Appeal.

## Standard Of Review

A judgment of dissolution will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellant has the burden of proving error.

*Wright v. Wright*, 1 S.W.3d 52, 57 (Mo. App. W.D.1999).

## Marital Property

Husband challenges the trial court's division of marital property on two grounds: 1) the court erroneously declared the law in determining whether Wife's misconduct was a factor in the property division; and 2) there was no substantial evidence to support the court's finding that Husband engaged in marital misconduct. Based on these errors, Appellant concludes the court abused its discretion in making an unequal property division awarding 58% of the marital estate to Wife and 42% to Husband.

The trial court has considerable discretion in dividing marital property, and an appellate court will interfere only if the division is so heavily and unduly weighted in one party's favor as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances and is sufficiently arbitrary and unreasonable as to shock the sense of justice. *Wright*, 1 S.W.3d at 57. If reasonable minds can differ about propriety of the trial court's ruling, there was no abuse of discretion. *Id.* We presume the trial court's division of property is correct, and Appellant bears the burden of overcoming this presumption. *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App. W.D. 2000).

Marital property and debts must be divided "in such proportions as the court deems just" after consideration of the five factors in Section 452.330.1, RSMo.[1] This division need not be equal,

---

**1.** Disposition of property, factors to be considered:

[T]he court shall set apart to each spouse such spouse's non-marital property and shall divide the marital property and marital debts

but only fair and equitable under the circumstances of the case. *Nelson*, 25 S.W.3d at 517. Generally, the division of marital property should be substantially equal unless one or more statutory or non-statutory factors causes such a division to be unjust. *Id.* at 518.

In this case, the judgment reflects that the trial court considered all five statutory factors and found that Husband's misconduct warranted an unequal division of property. This finding was consistent with Section 452.330.1(4) [2] which lists "[t]he conduct of the parties during the marriage" as the fourth statutory factor. Applying this provision, courts have held that marital misconduct becomes a factor in property division only when the offending conduct places burdens on the other spouse. *McIntosh v. McIntosh*, 41 S.W.3d 60, 68–69 (Mo.App. W.D.2001).

The trial court heard evidence about the alleged misconduct of both parties in this case. The judgment includes specific findings of Husband's financial misconduct. The court found that Husband failed to follow court orders to account for his income and to deposit the net proceeds of his bonus into a trust account. Husband dominated control of finances throughout the marriage and unreasonably restricted Wife's access to marital assets. Wife was forced to live with Husband, even after the parties separated, because Husband did not provide sufficient resources for her to establish a separate residence. The court

concluded that Husband substantially contributed to the breakdown of the marriage by disrespecting and manipulating Wife's role as his financial partner.

The judgment further states that Wife substantially contributed to the marriage breakdown by openly having an extramarital affair that began in July or August 1997 (four or five months prior to the parties' separation) and continued at the time of trial in February 2000. Wife purchased gifts for her paramour but did not spend significant marital resources on the relationship. After Husband filed for divorce, Wife purchased and brought home six pets with full knowledge of Husband's allergic reaction to animals. The parties previously had no pets, and the court found that Wife's actions were done, in part, to aggravate Husband.

Weighing the relative misconduct, the court stated in its judgment:

> With regard to division of property and debt, [Husband] has engaged in misconduct that has placed an undue burden on the marriage, which the Court has considered, among other factors, in making its division of assets and debts in this Judgment Of Dissolution of Marriage. While [Wife] has engaged in misconduct that has placed an emotional burden on [Husband], and which has been hateful, that misconduct has not placed an undue financial burden on the marriage.

---

in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the non-marital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

2. All statutory references are to the Missouri Revised Statutes (2000) unless otherwise noted.

Husband argues that the trial court erroneously declared the law in considering the parties' conduct under Section 452.330.1(4) because the judgment states that Husband's misconduct placed an "undue burden" on the marriage, while Wife's misconduct did not place an "undue financial burden" on the marriage. He contends the court not only applied an improper standard in evaluating Wife's misconduct, but also a different standard than was applied to Husband's misconduct.

■ Our review is not limited by the trial court's chosen terminology in evaluating the parties' conduct; rather we must focus on whether the court considered the extent to which the misconduct burdened the marital relationship. Those burdens may or may not have been financial in nature, but they become significant when the "misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership load." *Nelson*, 25 S.W.3d at 519. As we noted in *Mcintosh:*

> The purpose of considering misconduct is not to punish the party guilty of misconduct; rather it is to attempt to be realistic and just in issues of property and maintenance by recognizing that significant misconduct, of whatever kind, negatively affects the marital relationship and places burdens, even if not economic burdens, on the other party to the relationship.

41 S.W.3d at 69 (citations omitted).

We find no error in the trial court's maintenance award, as it is clear a determination was made that Husband's misconduct in restrictively controlling the finances played an extraordinary role in changing the marital balance, while Wife's extramarital affair did not as significantly impact the relationship. The court applied the proper analytical standard in deciding that the Husband's misconduct significantly burdened the marriage and, therefore, justified an unequal property division in Wife's favor.

■ We further find that the determination of Husband's misconduct was supported by substantial evidence. The amended judgment recites numerous incidents of Husband's malfeasance in disregarding court orders and denying Wife access to marital funds. While Husband presented evidence to counter the allegations of misconduct, the trial court was free to disbelieve it. Even if the evidence could support a different conclusion, we defer to the trial court's findings, as it is in the best position to weigh the evidence, determine credibility and sincerity of the witnesses, and determine other intangibles not revealed in a transcript. *Ellis v. Ellis*, 970 S.W.2d 416, 418 (Mo.App. W.D.1998).

Upon review of the record, Husband has failed to show the trial court abused its discretion with regard to the marital property award. Point One is denied.

### Child Support

■ Husband claims the trial court's child support calculation was in error because Husband was not given proper credit for overnight visitation.

■ A child support award in a dissolution will be upheld unless the trial court abused its discretion or erroneously applied the law. *Crews v. Crews*, 949 S.W.2d 659, 664 (Mo.App. W.D.1997). The trial court's award will not be disturbed on appeal, unless the evidence is palpably insufficient to support it. *Id.* Rule 88.01 [3]

---

**3.** All rule citations are to the Missouri Rules of Civil Procedure (2001) unless otherwise noted.

and Section 452.340 provide specific guidelines for awarding child support. *Stegman v. Stegman,* 996 S.W.2d 684, 686 (Mo.App. E.D.1999). When the trial court calculates the child support pursuant to guidelines set forth in Rule 88.01 and Form 14, there is a rebuttable presumption that this amount is correct. *Id.* The trial court may reject the presumption and deviate from the guidelines by finding the Form 14 amount to be unjust or inappropriate. *Id.*

In this case, the trial court rejected the Form 14 calculations submitted by the parties and prepared its own Form 14. The court calculated Husband's presumed child support obligation in the amount of $987 per month, after a 10% adjustment for overnight visitation with the children. Husband was ordered to pay the presumed amount, as the court did not find it unjust or inappropriate.

Husband argues that he was entitled to 20–25% child support adjustment based on the joint custody award allowing him 133 overnights annually with the children. Line 11 of the Form 14 allows an adjustment for overnight periods spent with the parent ordered to pay child support. The Form 14 directions for line 11 indicate that a 10% adjustment should be used if the children spend 92–109 overnights with the parent paying support. The directions further state the adjustment "may be greater than 10%" if the parent is awarded overnight custody for more than 109 overnights per year.

The Form 14 directions indicate that the trial court was not obligated to give Husband an adjustment exceeding 10%, but could do so in its discretion. Husband's brief cites two cases where trial courts exercised discretion to deviate upward from the 10% adjustment and were upheld on appeal. *Trausch–Azar v. Trausch,* 983 S.W.2d 199 (Mo.App. E.D.1998); *Stegman v. Stegman,* 996 S.W.2d 684 (Mo.App. E.D.

1999). Neither case supports Husband's argument that the trial court was *required* to make the upward adjustment and erred in failing to do so.

Point II is denied, as Husband has not shown an abuse of discretion in the child support award.

### Maintenance

■ Husband asserts the court erred in awarding maintenance to Wife because there was insufficient evidence that Wife was unable to support herself through appropriate employment. He further argues the maintenance award was an abuse of discretion because Wife did not make good faith efforts to complete her college education and prepare herself for appropriate employment.

■ The trial court is afforded broad discretion in awarding maintenance and its decision will not be disturbed absent an abuse of discretion. *Whitworth v. Whitworth,* 878 S.W.2d 479, 483 (Mo.App. W.D.1994). An appellate court will interfere with a maintenance award only when it is patently unwarranted or is wholly beyond the means of the spouse who pays maintenance. *Gardner v. Gardner,* 830 S.W.2d 559, 561 (Mo.App. W.D.1992). The burden is on the party contesting maintenance to prove that the maintenance award shocks the appellate court's sense of justice. *Theilen v. Theilen,* 847 S.W.2d 116, 123 (Mo.App. W.D.1992).

Pursuant to Section 452.335.1, maintenance may be awarded to a spouse who: 1) lacks sufficient property to provide for his or her reasonable needs, and 2) is unable to support him or herself through appropriate employment. If this two-part threshold test is met, the court then considers the following factors in determining the amount and duration of the maintenance award:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party.

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

Section 452.335.2.

██ The trial court found that Wife was entitled to maintenance because she met the two-part threshold test in Section 452.335.1. Husband challenges the sufficiency of the evidence with regard to the finding that Wife was unable to support herself through appropriate employment. This challenge requires that we view the evidence in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Whitworth,* 878 S.W.2d at 483.

Wife testified that for most of the twelve-year marriage she was unemployed and stayed home as the primary caretaker for the children. Husband agreed to this arrangement and afforded the family a comfortable lifestyle with income from his employment with a financial services company. After the parties separated in December 1997, Wife began working part-time jobs that allowed her to continue as the children's primary caretaker. Wife presented evidence that her monthly part-time earnings of $784.00 were insufficient to cover the monthly living expenses of $5249.00 for her and the children.

Husband's year 2000 base salary was $72,439.00 plus bonuses totaling $30,731.00 that were carried over from 1999. Husband disputed the total amount of Wife's living expenses and argued that Wife could earn a greater income if she obtained a college degree. Wife quit college after earning 117 credit hours prior to the marriage. Wife testified that she intended to return to college after the divorce, but was unsure whether all of her earned credits would be applied to a degree program. She estimated that it would take two to three years as a part-time student to complete her college degree.

Based on the evidence presented, the trial court found that Wife was capable of earning $1,600.00 monthly and that the reasonable monthly living expenses for her and the children totaled $4,000.00. In so doing, the court factored in Husband's argument that Wife had the ability to earn a higher income and that her living expenses were inflated. The court determined that with $1,600.00 in imputed income and $987.00 in child support from Husband, Wife would have a shortfall of $1,413.00 in attempting to meet her reasonable monthly living expenses of $4,000.00. The shortfall justified maintenance in the amount of $1,413.00; however, the court reduced

Wife's maintenance award to $1,200.00 due to her extramarital affair which preceded and continued throughout the divorce proceedings.

The court declined to limit the duration of the maintenance award because it found "no substantial or credible evidence" that wife would be able to meet her reasonable living expenses at the end of three years of further education. Given the speculative nature of Wife's future earnings, the judgment noted that the proper method to limit future maintenance was for Husband to file a motion for modification based on changed circumstances.

The record indicates that the trial court fully considered the evidence presented by both parties in awarding maintenance to Wife. Although Husband argues that different conclusions may be drawn from the evidence, we defer to the trial court's findings because they are supported by the record. The maintenance award is affirmed.

### Attorney's Fees on Appeal

Husband claims the trial court abused its discretion in awarding Wife attorney's fees on appeal, because (1) no hearing was held on the issue of attorney's fees, and (2) neither party was in a better financial position than the other to pay attorney's fees.

A trial court has discretion to award attorney's fees rising out of a dissolution case after considering all relevant factors, including the financial resources of both parties, the merits of the case, and the actions of a party. Section 452.355.1. This provision also applies to attorney's fees on appeal. *Meierer v. Meierer*, 876 S.W.2d 36, 37 (Mo.App. W.D.1994).

The trial court, as an expert in the necessity, reasonableness and value of attorney's fees, can independently determine and award such fees as it deems appropriate. *Crawford v. Crawford*, 986 S.W.2d 525, 533 (Mo.App. W.D.1999), *Bauer v. Bauer*, 38 S.W.3d 449, 457 (Mo. App. W.D.2001). The trial court's decision regarding attorney's fees is presumptively correct, and we will reverse only upon a finding of abuse of discretion. *Hennessey v. Smith–Hennessey*, 997 S.W.2d 538, 544 (Mo.App. W.D.1999). To show an abuse of discretion, "the complaining party must show that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice ." *Bauer*, 38 S.W.3d at 457.

After Husband filed a notice of appeal in this case, Wife filed a motion on July 6, 2000, requesting that Husband pay $6,000.00 for her attorney's fees on appeal. Husband filed suggestions opposing the motion and noticed the matter for hearing on September 5, 2000. At the hearing, counsel for both parties agreed that no testimony was necessary and that the trial court could rule on the attorney's fee motion based on the pleadings. Seven days later, the court ordered Husband to pay $5,000.00 for Wife's attorney's fees on appeal.

The court did not err in granting attorney's fees without an evidentiary hearing because Husband waived his right to present evidence. Moreover, Husband failed to preserve his right to assert any error on appeal because he did not object to the court deciding the matter on the pleadings.

As referenced earlier, the trial court made findings in the dissolution action that Husband engaged in misconduct by disobeying court orders and unfairly restricting Wife's access to marital assets. The court also determined that Husband's earnings were 4.5 times greater than Wife's income potential. These findings

were sufficient to meet the statutory considerations in Section 452.355.1 and, therefore, the court did not abuse its discretion in awarding Wife's attorney's fees.

The judgment of the trial court is affirmed.

All concur.