Robert F. THOMAS, Appellant,

v.

Jacqueline K. THOMAS, Respondent.

No. WD 60171.

Missouri Court of Appeals,
Western District.

June 4, 2002.

---

**2.** Except a jukebox purchased by appellant for $7000 for his business and valued by respondent at $4000.

Joseph M. Nelson, St. Joseph, for Appellant.

Hugh D. Kranitz, St. Joseph, for Respondent.

Before VICTOR C. HOWARD, P.J., EDWIN H. SMITH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Robert F. Thomas appeals the trial court's judgment dissolving his marriage to Jacqueline K. Thomas. On appeal, Mr. Thomas raises three points of error in the trial court's award of maintenance to Ms. Thomas and two points of error in the trial court's division of marital property.

We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert F. Thomas and Jacqueline K. Thomas were married on May 14, 1966. The parties separated in August 2000, and Mr. Thomas moved out of the home. The marriage produced three children, all of whom were emancipated at the time of the separation. At that time, their youngest son, Patrick, a full-time employee, was still living in the home.

Mr. Thomas filed for dissolution of marriage and Ms. Thomas answered, cross-petitioned for dissolution, and filed several motions. A hearing on Ms. Thomas' *Motion for Temporary Child*

*Support, Temporary Maintenance, and Temporary Attorney Fees* was held. Ms. Thomas withdrew her request for temporary child support for Patrick, and her request for temporary attorney fees was denied. The trial court, however, did order retroactive temporary maintenance in the amount of $750 per month.

Afterwards, Mr. Thomas filed a motion to amend the order for temporary maintenance. Mr. Thomas had worked as a salesperson at Garfield Lumber in St. Joseph for seventeen years at the time the petition for dissolution was filed, but, thereafter, was terminated from his position as a result of a reduction in staff. He found other employment in Kansas City nearly one month later. It was estimated that his annual income decreased from $30,000 to $29,500. The dissolution action was set for hearing, and at the time, Mr. Thomas owed two months of temporary maintenance.

Ms. Thomas had not been employed outside the home during their thirty-four years of marriage. Periodically though, she performed psychic readings and obtained some compensation. After the couple separated, she applied for employment but was rejected.

Ms. Thomas estimated her total living expenses to be $1,242 per month. Patrick, the Thomas' son, continued to live with Ms. Thomas in the marital home and was working full-time. He assisted with the gas, electricity, water, sewer, and telephone expenses, which were included in her living expenses estimate. Patrick testified that his mother also received a total of $350 per month in rent from him and housemates, Wes and Judy Bayless.

During their marriage, Ms. Thomas had a fiduciary relationship with her mother, which resulted in a lawsuit. Separate judgments were issued against the Thomases. The judgment against Ms. Thomas was for conversion of money from her mother, and the judgment against Mr. Thomas was based on unjust enrichment. His income from Garfield Lumber was garnished, partially satisfying the judgment against him. After their separation, liens were placed against the marital home and, at the time of trial, there was approximately $31,000 of equity in the home.

Ms. Thomas was awarded periodic spousal maintenance in the amount of $750 per month, plus $1,500 in maintenance arrearages. In dividing property, the trial court determined that each spouse should retain his/her motor vehicle, bank account, and specified household items. The trial court held each spouse individually responsible for the personal judgments against them. Credit card debt was also divided as set out in the following table outlining the trial court's allocation of property and debt.

The trial court allocated the mortgage on their marital home as "Joint Debt." However, "so long as [Ms. Thomas] resides in the parties residence" she was ordered to "pay the monthly payment to [the bank] with respect to the parties [*sic*] joint obligation." The judgment further provided, "The parties' realty described as the East half of Block 8 in the original town, now the City of Savannah, Andrew County, Missouri, and known locally as 602 West Chestnut shall be sold." Mr. Thomas was directed to "place the property on the market for sale at $56,000 or at such price as is recommended by the real estate agent selected by [him]." Also, "[t]he parties shall cooperate with any respect to any reasonable and necessary repairs and preparation for sale. Any equity remaining after paying the mortgage owed to [the bank] and the reasonable and necessary costs of sale including realtors [*sic*] commission, shall be divided equally between" the parties.

| Property Allocated to Robert Thomas | | Property Allocated to Jacqueline Thomas | |
|---|---|---|---|
| Item | Value | Item | Value |
| 1984 Honda motorcycle | $ 3,000 | 1984 Chrysler Lebaron | $ 150 |
| 1989 Honda Accord | $ 850 | 1990 Chrysler Lebaron | $ 1,000 |
| Miscellaneous household items, power tools, and bicycles | $ 3,080 | Miscellaneous household furnishings and appliances | $ 1,385 |
| Bank account at UMB | $ 900 | Bank account at Bank Midwest | $ 250 |
| **Debts Allocated to Robert Thomas** | | **Debts Allocated to Jacqueline Thomas** | |
| Item | Value | Item | Value |
| SEARS credit card | $ 5,236.90 | | |
| Visa card (petitioner's share) | $ 5,159 | Visa card (respondent's portion) | $ 2,159.47 |
| Judgment of Record Mulligan v. Robert Thomas | $144,000 | Judgment of Record Mulligan v. Jacqueline Thomas | $160,000 |
| Mortgage to Bank Midwest, jointly. Mr. Thomas was ordered to sell the home at $ 56,000 or such price as is recommended by his real estate agent. Equity to be divided equally. | ($ 23,899.48) | Mortgage to Bank Midwest, jointly, provided that she pays the monthly payment with respect to the joint obligation so long as she resides in the home. Equity to be divided equally upon the sale of the home. | ($ 23,899.48) |

The marriage was dissolved and this appeal was filed.

## II. STANDARD OF REVIEW

■ An appellate court will affirm a judgment of dissolution unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Hatchette v. Hatchette*, 57 S.W.3d 884, 888 (Mo.App. W.D.2001).

## III. LEGAL ANALYSIS

### A. Maintenance

Mr. Thomas raises three points on appeal concerning the trial court's award of maintenance to Ms. Thomas. In all three points, he claims that the trial court misapplied § 452.335 [1] in calculating its maintenance to Ms. Thomas in the amount of $750 per month. First, he claims that Ms. Thomas presented no substantial evidence to support a finding that she was unable to provide for her reasonable needs through employment. Next, he argues that the trial court failed to consider Mr. Thomas' ability to pay $750 per month in addition to meeting his own needs. Finally, he asserts that the trial court 1) did not consider substantial marital debt relief to wife as income; 2) did not impute minimum wage to wife or consider her ability to become self-supporting; 3) ignored uncontested evidence of rent income of $350 per month; and 4) did not consider the obligations or assets of either party for determination of the amount of maintenance. Essentially, he contends that the award does not reflect Ms. Thomas' ability to contribute to

1. All statutory references are to RSMo 2000.

her own needs and that the amount is beyond his ability to pay.

■■■ In reviewing these contentions, we must view the evidence in the light most favorable to the judgment while disregarding all evidence and inferences to the contrary. *See Hatchette,* 57 S.W.3d at 892. The trial court is granted broad discretion in granting maintenance and in the division of property. *Evans v. Evans,* 45 S.W.3d 523, 526 (Mo.App. W.D.2001). On these matters, an appellate court will interfere with the trial court's allocation only if it is so unduly weighted in favor of one party that it constitutes an abuse of discretion. *Wright v. Wright,* 1 S.W.3d 52, 57–60 (Mo.App. W.D.1999). An abuse of judicial discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 57. In contesting maintenance, Mr. Thomas bears the burden of proving that the maintenance award shocks the appellate court's sense of justice. *See Hatchette,* 57 S.W.3d at 891.

■■■ The spouse seeking maintenance is required to demonstrate need before maintenance is awarded. *See Griffin v. Griffin,* 986 S.W.2d 534, 538 (Mo.App. W.D.1999). Section 452.335 governs an award of maintenance and provides a two-part threshold test for determining the propriety of such an award. *See McIntosh v. McIntosh,* 41 S.W.3d 60, 67 (Mo.App. W.D.2001). Section 452.335.1 states in part:

1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

In granting the maintenance award, the trial court made the following oral findings:

Now, regarding maintenance, the Court finds that the petitioner makes presently $29,500 a year in his employment. The Court finds that the respondent has no job or income other than a small and insignificant amount that she receives from psychic readings. The Court finds that the income she derives from these readings referred to as psychic readings are insignificant and are not any type of regular income or employment. The Court finds from the evidence presented that the respondent has not worked during the parties' 35 years of marriage and the Court finds that, based on her lack of employment during that period of time where she was in fact encouraged not to work, that she is in need of maintenance upon the dissolution of the marriage of the parties.

In arriving at the proper amount to be awarded, the Court finds that the amount of maintenance respondent is entitled to receive, based on the petitioner's income and expenses as well as respondent's income and expenses, is to remain at what I had ordered previously, and that is $750 per month.

Thus, by finding that Ms. Thomas demonstrated need, the trial court implicitly

found both 1) that she lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and 2) that she was unable to support herself through appropriate employment.

Ms. Thomas testified to reasonable needs of $1,242 per month and requested an award in that amount. Patrick testified that he contributed approximately $150 per month toward utility bills, and he further testified that he, Wes, and Judy Bayless paid Ms. Thomas $350 per month in rent. The trial court awarded $750 in monthly maintenance. Because the trial court made no specific findings on this issue, we apply Rule 73.01(c),[2] which provides that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached, and conclude that the trial court considered Patrick's contribution and the rental income in arriving at its $750 figure.

■■■■■ The disparity between the parties' earning capacity is readily apparent. Ms. Thomas has been out of the labor market for thirty-five years, and, without further education or training, her ability to immediately secure employment at a salary comparable to Mr. Thomas' is questionable at best. "A gross and permanent disparity between the parties' ability to work and earn is a sound reason for an award of maintenance." *Klein v. Klein,* 837 S.W.2d 567, 570 (Mo.App. W.D.1992). "Although self-sufficiency should be encouraged, maintenance may be awarded when one spouse was a homemaker during the marriage and relied on the other spouse for monetary support, staying out of the marketplace." *Hill v. Hill,* 53 S.W.3d 114, 117 (Mo. banc 2001). Prior to their marriage, Mr. Thomas either told

Ms. Thomas or agreed that she would be a stay-at-home mother and wife. "The detrimental effect of the withdrawal of a spouse from the job market to assume the duties of a homemaker which cause the spouse to be unable to provide for his or her reasonable needs is also a sound basis for an award of maintenance." *Klein,* 837 S.W.2d at 570. Therefore, we cannot say that the trial court abused its discretion in awarding maintenance.

Once the threshold of need is demonstrated, however, the trial court must set the amount and duration of the maintenance award after considering all relevant factors, including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party.

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

**2.** Missouri Supreme Court Rules (2002).

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2.

▪▪▪ Mr. Thomas alleges that the trial court neglected to consider his ability to pay the amount of maintenance awarded. In determining the amount of maintenance, the trial court must consider both the reasonable needs of the spouse seeking maintenance and the other spouse's ability to pay, and "[a]n award of maintenance should not exceed the paying spouse's capacity to provide." *Griffin*, 986 S.W.2d at 538; *see* § 452.335.2(8). The evidence at trial revealed that Mr. Thomas' gross income was $29,500 per year, which results in approximately $2,460 monthly. His net monthly income was stated to be $1,711, and these figures were uncontested. The record reflects that Mr. Thomas' average monthly expenses, including monthly payments of $750 in maintenance to Ms. Thomas, totals approximately $1,899.50. It is apparent that Mr. Thomas cannot afford to pay $750 per month in maintenance and provide for his own essential needs. As indicated in the table *supra*, he was allocated $10,396.37 in marital debt, and he has a judgment recorded against him individually in the amount of $144,000. The record does not contain evidence to rebut the reasonable conclusion that the amount of the award in relationship to Mr. Thomas' total income and essential needs will deprive him of the ability to satisfy those needs. Therefore, we must reverse and remand on the issue of the amount and duration of the maintenance award.

▪▪▪ In addition, Ms. Thomas testified that, aside from a lower back problem, she was reasonably healthy and that she was capable of holding a full-time job that did not require her to spend a substantial amount of time on her feet. In fact, while the case was pending, Ms. Thomas testified that she had attempted to obtain employment at three different locations. Thus, her testimony expressed a willingness and suggested an ability to become at least partially self-sufficient, and, without any hint of a condition that would preclude her ability to work, such testimony militates against a finding that the trial court considered the time necessary for her to obtain appropriate employment.

▪▪▪ "The purpose of maintenance is to assist a spouse who is unable to be self-supporting through appropriate employment." *Creech v. Creech*, 992 S.W.2d 226, 229–30 (Mo.App. E.D.1999). "Appropriate employment" is employment that is appropriate to a person's skills and interests. *Finnical v. Finnical*, 992 S.W.2d 337, 341 (Mo.App. W.D.1999). "A court should consider the obligation of a spouse to contribute to his or her own support." *Evans*, 45 S.W.3d at 530. This consideration stems from the recipient spouse's duty to, in good faith, seek and obtain full-time employment within a reasonable time after the divorce for purposes of self-sufficiency. *See id.* In this respect, it is clear that the trial court's maintenance award lacked careful consideration because there was no evidence that Ms. Thomas' ability to work was impeded in any way.[3] While the trial court was within its discretion to find that Ms. Thomas met the threshold requirement of need, the trial court's tacit finding that Ms. Thomas was unable to support herself, at least partially, through appropriate employment is against the weight of the evidence. *See Bullard v.*

---

**3.** We do not implicitly suggest that her practice of providing psychic readings should be considered "appropriate employment."

*Bullard,* 929 S.W.2d 942, 945 (Mo.App. E.D.1996).

 In a similar vein, Mr. Thomas also argues that the trial court erred in failing to impute an income to Ms. Thomas in awarding maintenance. The decision of whether to impute income depends upon the particular facts of each case. *See Hill,* 53 S.W.3d at 117. Consistent with our finding concerning Ms. Thomas' ability to obtain appropriate employment, we direct the trial court on remand to focus on Ms. Thomas' present attitude regarding employment and to impute to her, in light of her abilities, a reasonable level of expected income, if any. "A court can impute income to a spouse seeking maintenance 'according to what he or she could earn by use of his or her best efforts to gain employment suitable to his or her capabilities.'" *Hosack v. Hosack,* 973 S.W.2d 863, 871 (Mo.App. W.D.1998) (quoting *Schroeder v. Schroeder,* 924 S.W.2d 22, 27 (Mo. App. E.D.1996)).

For all these reasons, the maintenance award is reversed and remanded.

### B. Distribution of Marital Property

Mr. Thomas' final two points on appeal concern the trial court's division of the marital residence. The judgment provides, in relevant part:

The parties' realty described as the East half of Block 8 in the original town, now the City of Savannah, Andrew County, Missouri and known locally as 602 West Chestnut shall be sold. [Mr. Thomas] shall place the property on the market for sale at $56,000 or at such price as is recommended by the real estate agent selected by [him]. The parties shall cooperate with any respect to any reasonable and necessary repairs and preparation for sale. Any equity remaining after paying the mortgage owed to [the bank] and the reasonable and necessary costs of sale, including realtors commission, shall be divided equally between [Robert] and [Jacqueline].

### 1. Tenancy in Common

 In Point IV, Mr. Thomas asserts that the trial court failed to divide the marital property pursuant to § 452.330. He claims that the trial court directed that the property should be sold, but that it was not completely divided because title was left in joint tenancy. Further, he alleges that the property should have been given to one spouse.

 Placing the marital property in common ownership until a sale does not represent error *ipso facto.*[4] Our courts

---

4. We acknowledge that this district has a historical distaste of leaving marital property vested in the parties as tenants in common after dissolution absent a compelling reason. *See, e.g., True v. True,* 762 S.W.2d 489, 490 (Mo.App. W.D.1988) ("Unless there is some evidence which shows the necessity for continuing a tenancy in common, it is improper for the trial court to leave property vested jointly in the parties after a dissolution."); *In re Farquhar,* 719 S.W.2d 456, 458 (Mo.App. W.D.1986) ("[E]xcept in the most unusual case, a complete division of marital property should be achieved in the dissolution decree."); *Branstetter v. Branstetter,* 637 S.W.2d 347, 350 (Mo.App. W.D.1982) ("Section 452.330 mandates to the trial court the duties of dividing the marital property and unless there be an unusual call for 'a tenancy in common relationship,' the trial court would make such property division.") (internal citation omitted); *see also Johnson v. Johnson,* 894 S.W.2d 245, 248 (Mo.App. E.D.1995) (noting that "the issue of allowing parties to remain as tenants in common after dissolution has been the subject of debate"); *Mehrle v. Mehrle,* 813 S.W.2d 886, 889 (Mo.App. S.D. 1991) ("Several Missouri cases, primarily from the Western District, have expressed a reluctance, absent a compelling reason, to leave marital property, real or personal, vested in the parties as tenants in common.");

have allowed this type of distribution of the marital residence prior to a sale in several circumstances. *See, e.g., Rivers v. Rivers,* 21 S.W.3d 117, 123–24 (Mo.App. W.D.2000); *Mozingo v. Mozingo,* 822 S.W.2d 483, 484 (Mo.App. W.D.1991). Further, Mr. Thomas is unable to claim that such distribution was inequitable. He was asked, "And you're asking the Court to divide [the $31,000 in equity in the house], to order the house to be sold, and the equity be split 50/50?" He responded, "That's correct." Accordingly, "[h]aving requested the distribution awarded by the trial court, [the appellant] cannot now complain." *Glosier v. Glosier,* 817 S.W.2d 580, 584 (Mo.App. E.D.1991); *see Reeves v. Reeves,* 768 S.W.2d 649, 652 (Mo.App. S.D. 1989). Point IV is denied.

### 2. Sale of the Marital Home

 In his final point, Mr. Thomas basically claims that the trial court directed the sale of the property without giving him the power to pass good title. He asserts that the trial court set no time limit for the sale of the house and that Ms. Thomas has no incentive to cooperate in any sale. Also, he points out that there is no legal description of the property in the judgment.

Pursuant to the judgment, each party will share equally upon the sale of the home, whenever that occurs, and both spouses are responsible for the mortgage payments except that Ms. Thomas is responsible for the mortgage payments as long as she continues to live there. "Placing the burden of the monthly mortgage payments on Wife obviously was a method by which the court could encourage Wife to sell the residence and to obtain fuller employment." *Ansley v. Ansley,* 15 S.W.3d 28, 34 (Mo.App. W.D.2000). However, Ms. Thomas testified that the rental rates in Savannah exceed her monthly mortgage payment, and, therefore, Mr. Thomas contends that this represents a disincentive for her to sell the property.

As is evident from the portion of the decree quoted *supra,* the judgment is silent as to when or how the property shall be sold. Thus, the portion of the trial court's judgment ordering the sale of the marital residence at an undefined time is remanded for clarification. *See Knigge v. Knigge,* 903 S.W.2d 225, 227 (Mo.App. E.D.1995). The trial court is directed to designate a time period for the sale of the marital home and any other relevant conditions that the trial court deems appropriate. We also direct the trial court on remand to include a full legal description of the property in its decree. *See Ricklefs v. Ricklefs,* 39 S.W.3d 865, 879–80 (Mo. App. W.D.2001). The trial court's distribution of property is affirmed in all other respects.

### IV. CONCLUSION

We are confident that the trial court attempted to arrive at a fair and just

---

*Handshear v. Handshear,* 775 S.W.2d 544, 547 (Mo.App. E.D.1989) ("We recognize the cases ... decided by the Missouri Court of Appeals, Western District, may conflict with our decision and previous decisions of this court. We find the decisions in *Hagar v. Hagar,* 722 S.W.2d 358 (Mo.App. W.D.1987), *In re: The Marriage of Farquhar,* 719 S.W.2d 456 (Mo. App. W.D.1986), and, *Buthod v. Buthod,* 624 S.W.2d 119 (Mo.App. W.D.1981) not controlling."); *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 65 (Mo. banc 1983) (noting "an apparent conflict between the Eastern and Western Districts of the Court of Appeals on the disposition of marital property"). However, based upon the trial court's explicit direction that "the property shall be sold," we are confident that the trial court had no intention of allowing the marital home to remain in common ownership, and the trial court's failure to set more explicit guidelines concerning the sale, such as a timeframe, is discussed *infra.*

result. However, the maintenance award must be reversed and remanded. To the extent that the imputed income, if any, does not satisfy Ms. Thomas' reasonable needs, the trial court shall consider Mr. Thomas ability to pay and the factors set forth in § 452.335.2 in ordering him to pay reasonable maintenance. Because we must remand this case to the trial court on the issue of maintenance, we likewise remand with directions that the trial court set a definite time for the sale of the marital home, which includes a full legal description of the property, and include other conditions as it deems necessary. The trial court may receive additional evidence and make additional orders that it deems necessary and consistent with this opinion.

VICTOR C. HOWARD, P.J., and EDWIN H. SMITH, J. concur.