Robert KELLY, Appellant,

v.

Carlotta A. KELLY, Respondent.

No. WD 72238.

Missouri Court of Appeals,
Western District.

May 10, 2011.

George A. Wheeler, Kansas City, MO, for appellant.

Brent L. Winterberg, Kansas City, MO, for respondent.

Before: MARK D. PFEIFFER, P.J., and THOMAS H. NEWTON and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Robert Kelly ("Husband") appeals the decree entered by the Circuit Court of Clay County, dissolving his marriage to Carlotta A. Kelly ("Wife"). Husband argues that the circuit court erred by failing to specify a date certain for the sale of the marital home, and erroneously: classified a portion of Husband's pension and retirement savings plan as marital property; failed to assign to Wife a share of the expenses to maintain the home; and awarded Wife $1,000 in attorneys fees. Because we conclude that the trial court should have specified a method for selling the marital home by a specific date if efforts to market the home as specified in the judgment were unsuccessful, we reverse and remand for further proceedings concerning the sale of the marital home. We reject Husband's other challenges to the dissolution decree.

## Factual Background

Husband and Wife were married on July 21, 2001. The parties physically separated on or about September 28, 2008, after Husband came home and discovered that Wife had moved out.

During the marriage, Husband and Wife purchased a home in Liberty for $219,000; a $205,850 balance remained on the mortgage at the time of trial. Husband testified that the current value of the home is only $195,000, while Wife testified that the value was $250,000. Husband testified that he paid $30,000 in upkeep after Wife vacated the home, and that he can no longer afford to stay there.

The evidence indicates that Husband receives substantially more income per month than Wife. Husband worked for the United States Department of Housing and Urban Development ("HUD") until retiring in 2004, and currently receives $4,800 per month from his pension. Wife, on the other hand, is a full time employee with the Internal Revenue Service, earning $38,118 in salary, or $3,176 per month. In addition to his pension, Husband opened a Thrift Savings Plan[1] account while employed with HUD. Husband testified that, at the time of trial, his Thrift Savings Plan account had a balance of approximately $50,000.

The circuit court held a trial on January 26, 2010, and entered its final decree on February 17, 2010. It ordered the marital home sold, and ordered that the net sales proceeds be divided 60% to Husband, and 40% to Wife. The court's decree specifies that the home be listed for sale at $240,000, and decreased $10,000 in listing price for every 60 days on the market, until the price reaches $210,000, where it will remain until sold. The decree does

---

1. The Thrift Savings Plan is a defined-contribution retirement savings and investment plan for Federal employees and members of the uniformed services.

not specify an end date for the marketing of the home, or specify what will happen if the home fails to sell even at the reduced listing price of $210,000. The circuit court allowed Husband to continue to live in the home, but required that he maintain the property in optimal sales condition at all times, and continue to pay the mortgage and utility bills. Additionally, the circuit court ordered that Husband pay Wife $15,000 in the event he defaulted on the mortgage and a foreclosure resulted.

The circuit court classified 11.5% of Husband's pension and Thrift Savings Plan account as marital property, based on the fact that he was married for three of the 26 years he worked at HUD. The court divided this marital portion evenly. The circuit court did not require Wife to contribute to Husband's claimed $30,000 in home upkeep expenses, and ordered Husband to pay $1,000 of Wife's attorneys fees. Although both parties requested it, the trial court did not order that spousal maintenance be paid to either party. Husband appeals.

**Standard of Review**

■■■ "In a dissolution proceeding, we affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wisdom v. Wisdom,* 316 S.W.3d 499, 501 (Mo.App. W.D.2010). "As to the court's division of marital property, we will reverse the trial court's decision only when the division so unfairly favors one party that it amounts to an abuse of discretion." *Id.* "We review all evidence in the light most favorable to the ruling of the trial court and find an abuse of discretion only when the ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'" *Id.* (citation omitted).

**Analysis[2]**

**I.**

■■ Husband argues, first, that the circuit court abused its discretion by failing to set a specific deadline to sell the marital home, because the judgment placed an undue burden on him to maintain the home, and gave Wife no incentive to facilitate the sale of the home (for example, by agreeing to a sale for less than the home's listing price). We agree.[3]

The circuit court's judgment notes that the parties agreed that the home should be sold, and provided that:

[T]he parties' marital home ... shall be listed for sale with a realtor with a list or asking price of $240,000.... [I]f the said marital real estate is not sold (or a signed contract for sale obtained) within 60 days, the asking or list price shall be lowered by $10,000, and further shall be lowered by an additional $10,000 after each 60 days that the property is not sold (or a signed contract for sale ob-

---

2. At the outset, we note that Husband's brief is deficient in many respects. The brief consists almost entirely of statements of general legal propositions, and lacks in many instances any explanation as to how the legal principles Husband recites justify reversal on the facts of this case. "An argument should show how the principles of law and the facts of the case interact." *Boyd v. Boyd,* 134 S.W.3d 820, 824 (Mo.App. W.D.2004). Nevertheless, we prefer "to dispose of a case on the merits rather than to dismiss an appeal for deficien-

cies in the brief." *Nicholson v. Transamerica Occidental Life Ins. Co.,* 144 S.W.3d 302, 308 (Mo.App. W.D.2004). For that reason, we address Husband's claims of error on the merits to the extent we can discern them, and to the extent they have been briefed in a minimally adequate fashion.

3. Neither party challenges the trial court's order requiring that the home be sold.

tained) until the price is lowered to $210,000 at which time it shall remain at $210,000 until sold.

The judgment provided that "the parties may ... agree to a sales contract of less than the listed or asking price, so long as both [Husband] and [Wife] agree." It also provided that Husband "may remain in possession [of] the home until sold, but he must maintain the property in a condition for optimal sales presentation at all times," and "shall timely pay the monthly mortgage payments to Wells Fargo as well as utility payments until the marital home is sold." If Husband "default[s] on the loan resulting in foreclosure on the property, [Wife] is awarded a Judgment against [Husband] in the amount of $15,000."

Although the judgment specifies an initial listing price for the home, and a schedule on which the listing price will be gradually reduced if it fails to sell, the judgment fails to specify any date certain by which the home must be sold, or specify any procedure by which the home can be sold for less than its listing price (other than with the consent of both parties). Moreover, because she is not paying any of the costs for maintaining the home's physical condition or financing, and stands to receive a substantial judgment if Husband fails to make payments on the mortgage, Wife has little or no incentive to facilitate the prompt sale of the home.

The specification in the decree of an initial listing price, and the schedule for reducing that listing price if efforts to sell the home are unsuccessful, represents a practical approach to the sale of marital real estate in the current economic climate. Nevertheless, in order to be sufficiently definite and minimize the need for future court intervention, and given the lack of any other apparent incentive on Wife to facilitate a sale, the judgment must contain some provisions to ensure that the residence is not marketed indefinitely, and provide some mechanism for selling the property if the parties are unable to agree to a disposition.

We addressed a similar dissolution decree in *Thomas v. Thomas,* 76 S.W.3d 295 (Mo.App. W.D.2002). There, the decree provided that the marital home "shall be sold" and the proceeds equally divided, and ordered that the property be listed for sale "at $56,000 or at such price as is recommended by the real estate agent selected by [husband]." *Id.* at 298. The decree provided that the wife could continue to live in the home pending its sale, and required her to make the mortgage payments while she resided there. *Id.* While the decree in *Thomas* required the wife to make the mortgage payments on the property, we nevertheless agreed with husband's complaints that the decree "set no time limit for the sale of the house" and gave wife "no incentive to cooperate in any sale." *Id.* at 304. We noted that wife had testified that rental rates in the relevant community exceeded the mortgage payments, which husband contended "represents a disincentive for her to sell the property." *Id.* In these circumstances, we held that the decree had to be modified to specify a time period within which the home must be sold:

> As is evident from the portion of the decree quoted *supra,* the judgment is silent as to when or how the property shall be sold. Thus, the portion of the trial court's judgment ordering the sale of the marital residence at an undefined time is remanded for clarification. The trial court is directed to designate a time period for the sale of the marital home and any other relevant conditions that the trial court deems appropriate.

*Id.* (citation omitted).

The Southern District addressed a similar situation in *Bussen v. Bussen,* 273

S.W.3d 90 (Mo.App. S.D.2008), in which a dissolution decree provided only that the marital home "shall be sold" and the proceeds equally divided, and ordered that the property "be listed for sale." *Id.* at 91. As here, the husband in *Bussen* argued that the decree gave wife no incentive to participate in the aggressive marketing of the home, since she was given rent-free possession of a home having no mortgage. Following *Thomas*, *Bussen* reversed and remanded this aspect of the decree, directing that, on remand, "the trial court ... designate a time period for sale and other appropriate conditions, if any, not inconsistent with this opinion." *Id.* at 92; *see also Isakson v. Isakson*, 277 S.W.3d 784, 787–88 (Mo.App. S.D.2009).

Reversal is required in this case for the same reasons explained in *Thomas* and *Bussen*. While the decree here provides for a graduated listing price, it fails to provide for any definite conclusion to the marketing process, or give Wife any incentive to make accommodations to facilitate the sale (such as by agreeing to a sale below the listing price). As in *Thomas* and *Bussen*, we accordingly reverse this aspect of the decree, and remand to the trial court to designate a time period for the final sale of the home, and any other conditions the court deems appropriate.[4]

## II.

■ Husband argues that the circuit court abused its discretion by classifying 11.5% of both his HUD pension and Thrift

Savings Plan account as marital property, and then equally dividing the marital portion of those assets. We disagree.

The circuit court stated:

[Husband] is retired from his job with HUD [ ] where he worked for 26 years, three (3) of which were during the marriage. The marital portion of [Husband's] defined benefit pension is 11.5% of the total and shall be divided equally between [Husband] and [Wife] by means *of a domestic relations order dividing same as of the first payment after the* date of the parties' separation.

The court also treated 11.5% of Husband's Thrift Savings Plan account as marital, presumably for the same reason, and divided the marital portion equally between spouses.

Under § 452.330,[5] "the court shall set apart to each spouse such spouse's non-marital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors."

■■ " 'The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption.' " *Dunnagan v. Dunnagan*, 239 S.W.3d 181, 184 (Mo.App. S.D.2007) (citation omitted). Husband has failed to meet his burden of demonstrating that the circuit court abused its discretion in classifying 11.5% of his HUD pension as marital property, and dividing the marital portion evenly. The

---

4. For a discussion of options which may be available to the court in the event the parties are unable to effect a sale of the home by the date the court establishes, *see, e.g., In re Marriage of Usrey*, 781 S.W.2d 556, 561 (Mo.App. S.D.1989); *Swinford v. Swinford*, 682 S.W.2d 189, 191–92 (Mo.App. W.D.1984).

Husband's briefing also contends that the decree's award of a judgment of $15,000 to Wife, in the event that he defaults on payment

of the mortgage and the property is foreclosed, is inconsistent with § 452.330. Husband fails to support this claim with any authority other than a citation to the statute itself, and we therefore decline to address it.

5. Unless otherwise indicated, statutory citations refer to the RSMo 2000 as updated through the 2010 Cumulative Supplement.

Missouri Supreme Court has consistently held that "pursuant to § 452.330, vested pension benefits accruing during the marriage [are] marital property." *Doss v. Doss*, 822 S.W.2d 427, 428 (Mo. banc 1992) (citing *Kuchta v. Kuchta*, 636 S.W.2d 663, 665–67 (Mo. banc 1982)). "[A] worker is considered to have earned a ratable proportion of his or her pension as that person works, so that if a spouse was married for one-half of his or her working life, the former spouse would be entitled to a proportionate share of one-half of the pension benefits." *Missouri Prosecuting Attorneys v. Barton Cnty.*, 311 S.W.3d 737, 743 (Mo. banc 2010). In this case, Husband worked for HUD for 26 years, three years of which were during the marriage, amounting to 11.5% of his total period of HUD employment. Accordingly, the circuit court did not err in classifying 11.5% of Husband's pension as marital property.

■■■ The circuit court also acted within its discretion in classifying 11.5% of Husband's Thrift Savings Plan account balance as marital. "[A]ll property acquired by either spouse subsequent to the marriage" is considered to be marital property subject to division. § 452.330(2). Amounts contributed to a retirement savings plan during the marriage are considered to be marital property under this principle. *See, e.g., Davis v. Davis*, 107 S.W.3d 425, 433 (Mo.App. E.D.2003); *In re Marriage of Cranor*, 78 S.W.3d 150, 155 (Mo.App. S.D.2002) (holding that retirement benefits are marital property because they would be a form of deferred compensation funded by money earned during the parties' marriage); *In re Marriage of Box*, 968 S.W.2d 161, 164 (Mo.App. S.D.1998).

■■■ On the other hand, "retirement benefits accumulated prior to marriage are not marital property and are not divisible." *Hall v. Hall*, 118 S.W.3d 252, 259 (Mo.App.

W.D.2003) (citation omitted). Thus, Husband is correct "that a trial court in a dissolution case should ordinarily separate the marital and non-marital portion of a pension benefit [or retirement plan] according to the source of funds rule and set aside the non-marital portion of the pension benefit to the spouse that earned it." *Id.* (citing *Taylor v. Taylor*, 12 S.W.3d 340, 345 (Mo.App. W.D.2000)). "Under the source of funds rule, the character of property is determined by the source of funds used to finance the purchase of the property and the property is considered to be acquired as it is paid for." *Taylor*, 12 S.W.3d at 345 (citation omitted). "If there is an increase in the value of property which is part marital and part non-marital, the spouse contributing the non-marital funds and the spouse contributing the marital funds each receive a proportionate and fair return on their investment." *Id.* (citation omitted).

Here, the circuit court did not abuse its discretion in classifying 11.5%, or $5,750, of Husband's Thrift Savings Plan account as marital property, and awarding half of that amount, or $2,875, to Wife. During trial, Husband testified that he did not know the account balance in his Thrift Savings Plan account at the time of the parties' marriage, and he did not provide any history of contributions to the account, or any information concerning the rate of return experienced in the account before and after his marriage. In fact, no account statements or other records concerning the account were introduced in the trial court.

" 'Husband, as the party claiming that the property in question is [nonmarital], bears the burden of proving his contention by clear and convincing evidence.' " *Dunnagan*, 239 S.W.3d at 187 (citation omitted); *see also, e.g., Torrey v. Torrey*, 333 S.W.3d 34, 36 (Mo.App. W.D.2010) ("As

the party claiming that part of his 401(k) [retirement savings] plan was non-marital [on the ground that it was earned before the marriage], Husband bore the burden of proving that an identifiable portion of the plan was his separate property by clear and convincing evidence."); *Rodieck v. Rodieck,* 265 S.W.3d 377, 383 (Mo.App. W.D.2008). Here, while Husband testified that his Thrift Savings Plan account was initially established prior to the marriage, he provided the trial court with no information from which the court could determine the amount of the account that constituted non-marital property, because funded prior to the marriage. In these circumstances, and lacking information to make a more precise allocation, we cannot say that the circuit court abused its discretion in setting apart a portion of the Thrift Savings Plan account as non-marital based on the percentage of Husband's HUD employment which occurred prior to his marriage to Wife.

## III.

Husband also argues that the circuit court abused its discretion by failing to require Wife to contribute to the costs he had incurred prior to trial to maintain the home, and in ordering that he pay $1,000 of Wife's attorneys fees.

In response to questioning by his counsel, Husband agreed at trial that he was "asking the Judge ... not to assess one-half of the money that [he] spent ... for the upkeep of this property if no maintenance is awarded." The trial court did not order Husband to pay any maintenance to Wife. Husband cannot attack an aspect of the decree's property division which he expressly invited. *Reynolds v. Reynolds,* 109 S.W.3d 258, 274 (Mo.App. W.D.2003); *Thomas v. Thomas,* 76 S.W.3d 295, 304 (Mo.App. W.D.2002).

The circuit court awarded Wife $1,000 out of the approximately $4,000 in attorneys fees she claimed to have incurred in the dissolution action, based on the fact that Husband's "income is a little less than twice that of" Wife. The legislature granted the circuit court broad authority to award attorneys fees to either party in a dissolution proceeding.

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

§ 452.355(1). " 'The trial court is considered an expert as to the necessity, reasonableness, and value of attorneys' fees and thus, the trial court's decision is presumptively correct.' We will only reverse an award of attorney's fees when the award is so arbitrary and unreasonable as to indicate indifference or a lack of consideration in the trial court." *Pickering v. Pickering,* 314 S.W.3d 822, 841 (Mo.App. W.D.2010) (citations omitted).

Here, Husband simply argues in a conclusory fashion that the attorneys fees award was "unjust," without identifying any specific circumstances which rendered a fee award inappropriate in this case. Given Husband's skeletal argument on this point, we cannot find that the circuit court abused its discretion in awarding $1,000 in attorneys fees to Wife.

## Conclusion

The circuit court's judgment, specifying the manner in which the marital home shall be sold, is reversed and remanded for further proceedings consistent with this opinion. The judgment is in all other respects affirmed.

All concur.