

# In the
# Missouri Court of Appeals
## Western District

LAURA COLLINS, )
)
   Respondent, ) WD81664
)
v. ) OPINION FILED: June 4, 2019
)
MELVIN COLLINS, )
)
   Appellant. )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jeffrey C. Keal, Judge

Before Division Two: Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Melvin Collins ("Husband") appeals from a judgment entered in the Circuit Court of Jackson County dissolving his marriage to Laura Collins ("Wife"). Husband argues that the trial court erred in (1) granting his attorney's motion to withdraw; (2) denying his request for a continuance after his attorney's withdrawal; (3) entering a void nunc pro tunc judgment; (4) dividing marital property unfairly; and (5) awarding Wife attorneys' fees. Finding no error, we affirm.

# Factual and Procedural Background[1]

Husband and Wife were married June 2, 2007. Wife filed for dissolution of the marriage on November 29, 2016. Husband filed an answer and a counter-petition for dissolution of marriage on December 21, 2016.

During discovery, the trial court ordered Husband to permit Wife's appraiser to conduct an appraisal of the marital home on June 19, 2017. On the court ordered date, Husband denied Wife's appraiser entry into the marital home. The trial court sanctioned Husband by ordering him to pay Wife $1,080 in attorney's fees and $100 for an appraisal fee. The trial date was rescheduled from July 13, 2017 to July 21, 2017 to allow time for Wife's appraisal to be conducted.

On July 12, 2017, Husband's attorney filed a motion to withdraw. The motion attached Husband's affidavit which stated: "Comes now the Respondent, Melvin Collins and hereby consents to the withdrawal of my attorney of record, Troy Leavitt, in the above captioned case." The trial court denied the motion to withdraw on July 18, 2017 because it failed to set forth Husband's complete address as required by local rule. The docket entry denying the motion to withdraw noted that "[n]o continuances will be granted and the trial will take place on July 21, 2017." On July 20, 2017, Husband's attorney filed a corrected motion to withdraw which again attached Husband's affidavit consenting to withdrawal. The trial court granted the motion to withdraw that same day.[2]

---

[1]We view the evidence in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Sparks v. Sparks*, 417 S.W.3d 269, 276 n.1 (Mo. App. W.D. 2013).

[2]While the trial court's order granting the motion to withdraw was dated October 20, 2017, this was plainly a clerical error. The trial court's docket entry shows the order was entered July 20, 2017.

2

On July 21, 2017, Husband appeared for trial without counsel. The trial court confirmed on the record that Husband had consented to the withdrawal of his attorney.[3] Husband then relied on his attorney's withdrawal to orally request a continuance. Husband's oral request for a continuance was denied. Trial proceeded with Wife presenting evidence during her case in chief, and Husband cross-examining Wife's witnesses *pro se*. On several occasions, Husband complained that he was prejudiced by the lack of counsel, and on each occasion the trial court advised Husband that the trial would continue as scheduled. Husband ultimately claimed that he was experiencing a medical emergency, which forced the trial court to suspend the trial so Husband could seek medical attention. The suspended trial proceedings were scheduled to resume on July 25, 2017.

On July 25, 2017, Husband appeared for the resumed trial proceedings with the same attorney who had been permitted to withdraw. That attorney re-entered his appearance as Husband's attorney. The trial continued without further incident. The trial court took the case under advisement at the close of the evidence.

The trial court entered its judgment dissolving the parties' marriage and dividing the parties' assets and liabilities on October 20, 2017 ("Judgment"). Relevant to this appeal,

---

[3]The trial court examined Husband under oath as follows:

The Court: And you are [Husband], the Respondent in this matter?
Husband: Yes, sir.
The Court: . . . Do you recognize this document?
Husband: Yes, sir.
The Court: Okay. And is that a consent to withdraw as an attorney, and is that your signature there?
Husband: Yes, sir.
The Court: So you wanted him to withdraw as your attorney, correct?
Husband: I did.
[Tr. p. 8]

3

the trial court found that: (i) $152,960.06 held in Husband's thrift saving plan ("TSP") was marital property, while the remaining balance was non-marital property; (ii) $425.96 of "a monthly benefit" Husband was due to receive from his Federal Employee Retirement System account ("FERS") was marital property, while the remainder was non-marital property; (iii) the proceeds of Husband's workers' compensation claim were marital property; (iv) the marital home had a value of $190,000 and was subject to a deed of trust in the amount of $58,473; and (v) a townhouse that belonged to Wife before the marriage remained Wife's non-marital property, though $19,145 of the equity in the townhouse was marital property.

The Judgment (i) ordered Husband to pay $5,000 in Wife's attorneys' fees; (ii) ordered Husband to pay $2,350 to equalize the division of the parties' bank accounts; (iii) ordered that the marital home and the debt against the home be set aside to Husband; (iv) ordered that $76,480.03, representing half of the marital portion of Husband's FERS account, be awarded to Wife; (v) ordered that Husband pay Wife $69,210 to "fairly and equitably divide the marital assets;" and (vi) otherwise divided the remaining non-marital and marital property according to exhibits attached to the Judgment. The Judgment's reference to the FERS account was mistaken, and should have been a reference to the TSP account. And as a result, the Judgment failed to address the marital portion of Husband's monthly retirement benefit from the FERS account.

Wife filed a motion to amend the Judgment on October 24, 2017. Wife's motion pointed out clerical errors in the Judgment, and also noted that the Judgment mistakenly referred to the award to Wife of $76,480.03 as half of the FERS account and failed to

4

address the monthly retirement benefit from the FERS account. Though Wife's motion was titled "motion to amend the judgment," the body of the motion alleged that the motion was being filed pursuant to "Rule 74.069(a)," a rule that does not exist. In a subsequent pleading, Wife characterized her motion to amend the Judgment as a Rule 74.06(a) motion to correct "clerical errors."

On November 13, 2017, the trial court entered an amended judgment ("Amended Judgment"). Among other things, the Amended Judgment changed the reference to the award of $76,480.03 to Wife to reflect that it represented one-half of Husband's TSP account. The Amended Judgment also added language to address the FERS account, and awarded Wife $212.98 a month, representing one-half of Husband's monthly benefit. The Amended Judgment made no reference to Rule 74.06(a) and did not purport to be a nunc pro tunc judgment.

On November 27, 2017, Husband's attorney once again filed a motion to withdraw as Husband's counsel. The motion was granted on December 1, 2017.

On December 13, 2017, Husband filed a *pro se* motion to vacate, reopen, or correct the Amended Judgment pursuant to Rule 75.01. In his motion, Husband noted that the Amended Judgment was a new judgment for all purposes pursuant to Rule 78.07(d). Husband's motion was denied on January 3, 2018.

On May 2, 2018, this court sustained Husband's motion for leave to file a notice of appeal out of time. Husband filed this appeal on May 8, 2018.

5

**Analysis**

Husband raises five points on appeal. First, Husband argues that the trial court erred in granting his attorney's motion to withdraw because the motion did not comply with a local court rule. Second, Husband argues that the trial court erred in denying his oral request for a continuance on the first day of trial. Third, Husband argues that the Amended Judgment was a void nunc pro tunc judgment. Fourth, Husband argues that the trial court erred in its division of property. Fifth, Husband argues that the trial court erred by awarding Wife attorneys' fees.

"This court will affirm the trial court's [judgment] unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Ritter v. Ritter*, 920 S.W.2d 151, 159-60 (Mo. App. W.D. 1996) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "This court reviews the evidence in the light most favorable to the dissolution decree, disregarding contrary evidence, and defers to the trial court even if the evidence could support a different conclusion." *Id.* "We defer to the trial court's credibility determinations and assume all factual issues were resolved in favor of the judgment entered." *Pollard v. Pollard,* 401 S.W.3d 506, 510 (Mo. App. W.D. 2013) (quotations omitted).

We review for an abuse of discretion the trial court's grant of an attorney's motion to withdraw, denial of a motion for continuance, entry of an amended judgment, division and characterization of property, and award of attorneys' fees. *Karolat v. Karolat*, 151 S.W.3d 852, 858 (Mo. App. W.D. 2004) (grant of motion to withdraw); *Foster v. Foster*, 149 S.W.3d 575, 578-79 (Mo. App. W.D. 2004) (denial of continuance); *Jessen v. Jessen*,

6

450 S.W.3d 425, 432 (Mo. App. W.D. 2014) (entry of an amended judgment); *Barth v. Barth*, 372 S.W.3d 496, 503 (Mo. App. W.D. 2012) (division of property and award of attorneys' fees).

## Point One

In Husband's first point on appeal, he argues that the trial court erred in granting his attorney's motion to withdraw because the motion did not comply with 16th Judicial Circuit Rule 21.4. "Whether to allow trial counsel to withdraw is within the sound discretion of the trial court." *Nance v. Nance*, 880 S.W.2d 341, 345 (Mo. App. E.D. 1994). "Although that discretion is judicial in nature and reviewable on appeal, every intendment is in favor of the trial court's ruling." *Karolat*, 151 S.W.3d at 858.

16th Judicial Circuit Rule 21.4 permits an attorney to withdraw from a civil case with leave from the court if the attorney (1) complies with Supreme Court Rule 4-1.16;[4] (2) files a written motion containing the full address of the client setting forth the specific grounds for the relief sought; and (3) gives the client "written notification of the motion to withdraw" and "reasonable time to retain . . . another attorney." If the motion to withdraw is accompanied by the "the written consent of the client," 16th Judicial Circuit Rule 21.4(2) permits an attorney to forgo the requirements of serving notice of the motion on the client and holding a hearing.

Husband argues his attorney's motion to withdraw did not comply with the aforesaid local rule because Husband did not consent to the motion. Husband claims his consent to

---

[4]All Rule references are to *Missouri Court Rules, Volume I -- State, 2017* in effect at the time of trial to the court, unless otherwise noted.

7

the withdrawal applied only to the motion to withdraw filed on July 12, 2017, and not to the corrected motion to withdraw filed on July 20, 2017. Husband thus argues that the motion to withdraw filed on July 20, 2017 failed to satisfy the requirements of 16th Judicial Circuit Rule 21.4 because he did not receive notice of the motion. Husband relies on *Bledsoe v. Bledsoe*, 244 S.W.3d 204 (Mo. App. E.D. 2008) to argue that as a result, the trial court committed reversible error in granting the motion to withdraw. Husband's argument is without merit, and his reliance on *Bledsoe* is misplaced.

In *Bledsoe*, the Eastern District found that it was an abuse of discretion to grant husband's attorney's motion to withdraw when the husband did not consent to withdrawal, and when the motion was filed and granted immediately before trial commenced. 244 S.W.3d at 205-06. The Eastern District found that the husband was prejudiced because he had no opportunity to employ other counsel. *Id.*

Here, in contrast, Husband's attorney first filed a motion to withdraw on July 12, 2017, and that motion was accompanied by Husband's written consent to withdrawal. The same consent was attached to counsel's corrected motion to withdraw filed on July 20, 2017. Though Husband argues that his consent to withdrawal applied only to the motion filed on July 12, 2017, he argues no reasoned basis for concluding that his consent to withdrawal was withdrawn between July 12, 2017, and July 20, 2017. On its face, the consent is unequivocal, and is not temporally limited. And, when Husband appeared for trial on July 21, 2017, he was examined by the trial court to confirm that he had consented to his attorney's withdrawal. The trial court's conclusion that Husband consented to his attorney's withdrawal was not an abuse of discretion.

8

In addition, though the motion to withdraw was not granted until July 20, 2017, Husband knew by at least July 12, 2017 that his attorney was withdrawing, giving Husband 9 days to retain other counsel before the July 21, 2017 trial date. Yet, Husband delayed efforts to obtain other counsel for several days. On July 21, 2017, Husband told the trial court "I attempted to get another attorney, Your honor, and [the other attorney] said, "I can't help you. [Counsel's motion to withdraw] was denied. He's still your attorney of record."' The earliest this reported attempt to secure new counsel could have occurred was July 18, 2017 -- the date the trial court denied the July 12, 2017 motion to withdraw. Husband explained to the trial court that he waited several days to find new counsel because he "attempted to negotiate with [opposing counsel] *after I let [my attorney] go* . . . for misrepresenting me. [I wasted] several days with that." (emphasis added). Husband had a reasonable opportunity to obtain new counsel.

The trial court does not abuse its discretion when it granted Husband's attorney's motion to withdraw, as Husband consented to withdrawal and had a reasonable opportunity to obtain new counsel. *See Kamler v. Kamler*, 213 S.W.3d 185, 188 (Mo. App. E.D. 2007) (no abuse of discretion when client fired attorney three days before trial and court permitted withdrawal on the day of trial).

Point One is denied.

## Point Two

Husband's second point on appeal argues that the trial court erred when it denied Husband's oral request for a continuance on the first day of trial. "Because a trial judge is responsible for controlling his or her docket and the progress of litigation, the grant or

9

refusal of a continuance is a matter largely left to the sound discretion of the trial court." *Bolander v. City of Green City*, 35 S.W.3d 432, 439 (Mo. App. W.D. 2000). This court will reverse the denial of a continuance "only in extreme cases where the party requesting the continuance is clearly free of any dereliction." *Foster v. Foster*, 149 S.W.3d 575, 578 (Mo. App. W.D. 2004). "The fact that an attorney withdraws from a case does not give a party an absolute right to a continuance." *Bowman v. Prinster*, 384 S.W.3d 365, 371 (Mo. App. E.D. 2012). "In the absence of compliance with the requirements of Rule 65.03, there can be no abuse of discretion." *Nance*, 880 S.W.2d at 341.

Rule 65.03 requires a request for a continuance to be made "by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally." "The requirement that a motion be in writing is not a sophisticated or complex requirement, and 'a pro se litigant is held to the same standard as a licensed attorney' in regard to such requirements." *Bolander*, 35 S.W.3d at 439 (Mo. App. W.D. 2000) (quoting *Mills v. Mills*, 939 S.W.2d 72, 74 (Mo. App. W.D. 1997)).

Husband's oral request for a continuance on the first day of trial did not comply with Rule 65.03. On that basis alone, the trial court did not abuse its discretion in denying the request. *Mills*, 939 S.W.2d at 74 (holding that "noncompliance with Rule 65.03 is sufficient by itself to uphold the trial court's denial of a continuance").

Moreover, Husband was not free from dereliction in creating the circumstances that led to his request for a continuance. Husband fired his attorney after the trial court entered

10

sanctions against Husband on July 10, 2017. Despite executing a consent to attorney's withdrawal on or before July 12, 2017, Husband delayed any effort to secure new counsel for at least 6 days. Husband's "culpable neglect" affords an additional basis to affirm the trial court's denial of Husband's oral request for a continuance. *Bolander*, 35 S.W.3d at 439-40 (holding that denial of an oral request for continuance was not an abuse of discretion when the movant's "failure to have counsel at the hearing was the result of her own culpable neglect.").

Point Two is denied.

**Point Three**

Husband's third point on appeal argues that the Amended Judgment was a void nunc pro tunc judgment pursuant to Rule 74.06(a) as it did more than correct clerical mistakes.

The premise of Husband's point on appeal is not supported by the record. The Amended Judgment is plainly delineated as such, and makes no reference to Rule 74.06(a).[5] The Amended Judgment was entered while the trial court retained authority to amend the Judgment pursuant to Rule 75.01, which grants the trial court "control over

---

[5] Wife's counsel did take the position in pleadings filed with the trial court that the Amended Judgment was a Rule 74.06(a) judgment. However, Wife's view point is not controlling. Trial courts are presumed to know the law and to apply it correctly. *Dycus v. Cross*, 869 S.W.2d 745, 751 (Mo. banc 1994) ("We assume that the trial courts of this state know the law."). The authority to enter a nunc pro tunc judgment pursuant to Rule 74.06(a) is limited to "clerical mistakes in judgments . . . arising from oversight or omission." Rule 74.06(a). Though the Amended Judgment did correct a mistaken reference to the FERS account, and addressed division of the FERS account when that subject was omitted in the original Judgment, those changes do not qualify as clerical errors. The power to enter a nunc pro tunc judgment pursuant to Rule 74.06(a) "constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself." *Wilson v. Lilleston*, 290 S.W.3d 795, 799 (Mo. App. W.D. 2009). A nunc pro tunc judgment is limited to "correct[ing] error or inadvertence in the recording of that which was actually done, but which, because of that error or omission was not properly recorded." *Id*. (emphasis omitted). The Amended Judgment could not have corrected error or inadvertence associated with the Judgment's failure to properly record what the trial court had actually done as the Judgment was the first recording of the trial court's intentions.

11

judgments during the thirty-day period after entry of judgment." Husband's strained attempt to characterize the Amended Judgment as a void nunc pro tunc judgment is without merit, and is particularly disingenuous given Husband's assertion in his motion to vacate, reopen or correct the Amended Judgment that said judgment was entered pursuant to Rule 75.01 and constituted a new judgment for all purposes pursuant to Rule 78.07(d).

Undeterred, Husband argues on appeal that the Amended Judgment could not have been entered pursuant to Rule 75.01 because that rule requires the trial court to "giv[e] the parties an opportunity to be heard," and Husband was given no notice or an opportunity to be heard. Husband's argument conveniently ignores that Wife's October 24, 2017 motion to amend the Judgment reflects service on Husband's attorney though the Missouri Courts efiling system. Husband thus had notice of the motion, and an opportunity to be heard by responding to same, well before the Amended Judgment was entered on November 13, 2017. Husband did not file an opposition to Wife's motion to amend the Judgment, and according to the record, affirmatively represented by email to the court's law clerk that he was "in agreement" with the changes in the Judgment requested by Wife. Our courts have recognized that *de facto* notice is given to a party by "virtue of a pleading or pending motion or conversation[] with the court." *See Lacy v. Dalton*, 803 S.W.2d 664, 666 (Mo. App. E.D. 1991) (relying on *State ex rel. Stoffer v. Moore*, 628 S.W.2d 637, 645 (Mo. banc 1982)); *see also Clark v. Quality Dairy Co.*, 400 S.W.2d 78, 83 (Mo. 1966) (holding that a party had sufficient notice and opportunity to be heard during the three days of a motion's pendency). Husband had notice and an opportunity to be heard on Wife's motion to amend the Judgment during the 19 days it was pending before entry of the Amended Judgment.

12

Finally, Husband attempts to bolster his characterization of the Amended Judgment as a void nunc pro tunc judgment by claiming that the trial court denied his motion to vacate, reopen or correct the Amended Judgment because it was untimely since a nunc pro tunc judgment relates back to the date of the original Judgment. However, the trial court's order denying Husband's motion to vacate, reopen or correct the Amended Judgment did no such thing. The order stated simply that after review of the motion, suggestions in opposition,[6] the case file, and applicable case law and statutes, the motion was denied.

The Amended Judgment was not a void nunc pro tunc judgment.

Point Three is denied.

## Point Four

Husband argues in his fourth point on appeal that the trial court erred in dividing the parties' property because "it failed to properly characterize Husband's separate property and incorrectly valued the marital property, which resulted in an unfair overall division, and in that it erroneously awarded Wife multiple equalization payments."[7] In the argument portion of his brief, Husband explains that the trial court's errors resulted in an inequitable award of "95% of the parties' property to Wife and 5% to Husband." [Appellant's Brief p. 52]. Husband's claim regarding an inequitable division of property assumes, however, that the trial court erroneously divided and characterized the property in five discrete ways

---

[6]Though Wife's suggestions in opposition to Husband's motion to vacate, reopen or correct the Amended Judgment argued that the Amended Motion was a nunc pro tunc judgment, that does not control our interpretation of the trial court's order denying Husband's motion. Instead, we assume the trial court followed the law. *See supra* note 5.

[7]Though Husband's point asserts that the trial court erred in awarding Wife multiple equalization payments, Husband abandons this claim of error by not developing the claim in the body of his argument. "[E]rrors raised in the points relied on, which are not supported by argument, are deemed abandoned and present nothing for appellate review." *Eagle ex rel. Estate of Eagle v. Redmond*, 80 S.W.3d 920, 924 (Mo. App. W.D. 2002).

13

argued in Husband's brief: (1) by finding that the marital home had a value of $190,000; (2) by failing to characterize proceeds from the sale of Husband's premarital home as non-marital property; (3) by finding that Husband's workers' compensation award was marital property; (4) by finding that the townhouse was Wife's non-marital property; and (5) by finding that $152,960.06 of Husband's TSP account was marital property.

Husband's point on appeal does not comply with Rule 84.04(d)(1)(A), as it fails to "[i]dentify the trial court ruling or action that [Husband] challenges," and instead vaguely attacks the Amended Judgment's division of property as a whole. "The error contemplated by Rule 84.04(d) in a court-tried case is not the judgment itself but the trial court's actions or rulings on which the adverse judgment is based." *In re Marriage of Fritz*, 243 S.W.3d 484, 486 (Mo. App. E.D. 2007). Though the argument portion of Husband's brief does identify five specific trial court rulings claimed to be error, those rulings are not mentioned in the vague point relied on. Despite Husband's Rule 84.04(d) violation, because we prefer to resolve cases on the merits, and can readily discern the errors Husband claims in the argument portion of his brief, we exercise our discretion to resolve point four on the merits.

Section 452.330.1[8] governs the division of property in a dissolution proceeding and provides that "the court shall set apart to each spouse such spouse's non-marital property and shall divide the marital property and marital debts in such proportions as the court deems just . . . ." "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *Kelly v. Kelly*,

---

[8]All statutory references are to RSMo 2016 as applicable at the time of dissolution, unless otherwise indicated.

14

340 S.W.3d 673, 678 (Mo. App. W.D. 2011). "Unless the judgment lacks substantial evidence to support it, or is against the clear weight of evidence, we will sustain the trial court's finding." *Sparks v. Sparks*, 417 S.W.3d 269, 287 (Mo. App. W.D. 2013).

Husband first asserts that the trial court erroneously valued the marital home at $190,000. The trial court found the marital home had a value of $190,000, and specifically referenced Wife's testimony to that effect, supported by an appraisal report admitted into evidence. Husband argues that notwithstanding this evidence, because Wife "did not dispute" his testimony that Wife's appraisal was inflated and that the marital home was more appropriately valued at $135,000, the trial court was compelled to accept his testimony as true.

Husband's argument ignores our standard of review. We review the evidence in the light most favorable to the dissolution decree, disregarding contrary evidence, and we defer to the trial court even if the evidence could support a different conclusion. *Comninellis v. Comninellis*, 147 S.W.3d 102, 105-06 (Mo. App. W.D. 2004). Though Husband provided a contrary opinion about the value of the marital home at trial, the trial court did not abuse its discretion in disregarding Husband's testimony in favor of Wife's testimony and evidence. "In valuing marital property, the trial court may receive any relevant evidence on the issue, and we give great deference to the trial court's decision." *Jones v. Jones*, 277 S.W.3d 330, 337 (Mo. App. W.D. 2009). Wife's evidence valued the marital home at $190,000, and is sufficient to support the trial court's determination of the marital home's value.

15

Husband next argues that the trial court erroneously failed to characterize $30,000 Husband received from the sale of his premarital home as non-marital. Husband does not contest that these proceeds were contributed by him toward purchase of the marital home. In discussing Husband's several assertions at trial that various assets were his non-marital property, the Amended Judgment noted that all such assets had been comingled with marital property. The Amended Judgment found that:

> the placing of separate property of a spouse into the joint names of both spouses creates a presumption that the property transferred becomes marital property, and clear and convincing evidence is required to show that the transfer was not intended as a gift.

(citing *Spidle v. Spidle*, 853 S.W.2d 311, 314 (Mo. App. S.D. 1993)). In specifically addressing the proceeds from Husband's sale of his premarital home, the Amended Judgment found that Husband failed to clearly and convincingly rebut the presumption that the contribution of these proceeds toward purchase of the jointly titled marital home was a gift that converted the proceeds to marital property. Though Husband disagrees with the trial court's conclusion, the trial court's conclusion was not an abuse of discretion.

Husband next argues that the trial court erred in determining that a workers' compensation award he received in the amount of $30,808 was marital property. A workers' compensation award may be determined to be marital property to the "extent the recovery compensates for losses to the marital estate." *See Al-Yusuf v. Al-Yusuf*, 969 S.W.2d 778, 786 (Mo. App. W.D. 1998). Husband testified that he suffered work-related injuries to his rotator cuff and from carpel tunnel syndrome during the time he was married. Husband testified that his workers' compensation claim was filed and the award was paid

16

during the marriage. The trial court found that the workers' compensation award was intended to provide relief for "damages that occurred during the marriage." This finding was supported by substantial evidence.

Husband next argues that the trial court erred in declaring that the townhouse was Wife's non-marital property. Husband argues that the townhouse became marital property because he and Wife lived in the townhouse for two years, and because marital funds were used to improve the townhouse and to make routine mortgage payments on the townhouse.

"As a general principle, property owned by one spouse prior to the marriage will remain non-marital property and will be awarded to the owner of that property." *Fox v. Fox*, 552 S.W.3d 777, 788 (quoting *Goodwin v. Goodwin*, 263 S.W.3d 703, 706 (Mo. App. W.D. 2008)). "Thus, the property is usually considered non-marital if a spouse owned it before the marriage and retained title to it." *Id*. However, non-marital property may be characterized as marital property if evidence is presented that under the source of funds rule, a party is entitled to a portion of the non-marital property. *See Beckham v. Beckham*, 41 S.W.3d 908, 912 (Mo. App. W.D. 2001) (discussing the "source of funds" doctrine). Under the source of funds rule, "any increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase." *Selby v. Selby*, 149 S.W.3d 472, 484 (Mo. App. W.D. 2004). "This increase in value includes any equity accrued by the reduction of a property's mortgage if the parties used marital funds for the payments." *Fox*, 552 S.W.3d at 788. *See also Selby v. Selby*, 149 S.W.3d 472, 486 (Mo. App. W.D. 2004) ("If property acquired before marriage is subject to a loan, the

17

property becomes marital property to the extent marital funds are used to pay off the loan.").

Here, the evidence established that Wife bought the townhouse in 1998, more than eight years before marriage, and that the townhouse remained titled in Wife's name only throughout the marriage. Except for a period of approximately two years when Husband and Wife lived in the townhouse while they remodeled their newly acquired and jointly titled marital home, Wife maintained the townhouse as rental property, and deposited rental income in a separate bank account in her name. From this account, Wife paid for homeowner's dues, insurance, taxes, and maintenance costs associated with the townhouse. Wife testified that marital funds were used to discharge $19,145 in debt owed against the townhouse. No other evidence was admitted suggesting that marital assets were used to discharge any other debt owed against the townhouse. Though Husband claimed an additional marital interest in the townhouse for $10,000 he contributed in labor and materials to make repairs, Husband produced no evidence to support this bare assertion. The trial court was free to disbelieve Husband's testimony. *Laffey v. Laffey*, 4 S.W.3d 655, 658 (Mo. App. W.D. 1999). The trial court did not abuse its discretion by characterizing the townhouse as Wife's non-marital property, except to the extent of $19,145 in equity generated by the use of marital funds to discharge debt owed against the townhouse.

Nor did the trial court abuse its discretion by refusing to conclude that the townhouse had transmuted into marital property because the parties lived in the home for two years. Under the rule of transmutation, "separate property may be transmuted into marital property by express or implied agreement or by gift." *Selby*, 149 S.W.3d at 484. Husband

18

offered no evidence suggesting an express agreement with Wife to convert the townhouse to marital property. Though Husband and Wife lived in the townhouse for two years, that evidence was insufficient, standing alone, to establish an implied agreement to convert the townhouse to marital property. *See Fox v. Fox*, 552 S.W.3d 777, 788-89 (Mo. App. E.D. 2018) (holding that a home titled only in Husband's name did not become marital property though Husband and Wife resided in the home during the marriage except to the extent equity in the home was increased during the marriage through the use of marital assets).

Based on the evidence, the trial court did not abuse its discretion by characterizing the townhouse as Wife's non-marital property, except to the extent of marital funds used to discharge debt owed against the townhouse.

Finally, Husband argues that the trial court erred in finding that $152,960.06 of his TSP account was marital property while only $102,125.56 was non-marital property. The evidence established that the TSP account had a value of $102,125.56 at the time of the marriage, and that the account had increased in value to $255,085.62 by the time of dissolution of the marriage. "All property acquired by either spouse subsequent to the marriage . . . is presumed to be marital property" subject to division. Section 452.330.3. Accordingly, "[a]mounts contributed to a retirement savings plan during the marriage are considered to be marital property[.]" *Kelly*, 340 S.W.3d at 679. "A spouse who claims such property to be non-marital must assume the burden of rebutting the presumption by clear and convincing evidence." *Taylor v. Taylor*, 12 S.W.3d 340, 345 (Mo. App. W.D. 2000) (quotation omitted).

19

Husband agrees that the value of the TSP account at the beginning of the marriage was $102,125.56, but argues that he was entitled to having the growth in the non-marital portion of the account deemed to be his separate property. It is generally true that "[i]f there is an increase in the value of property which is part marital and part non-marital, the spouse contributing the non-marital funds and the spouse contributing the marital funds each receive a proportionate and fair return on their investment." *Kelly*, 340 S.W.3d at 679. But, Husband bore the burden of rebutting by clear and convincing evidence the presumption that all growth in the TSP account during the marriage was marital property.

Here, Husband testified that he believed the non-marital portion of the account had increased in value during the marriage at a rate of 5.5% annually, and that based on his calculations, the non-marital portion of the TSP account was $174,777 by the time of dissolution of the marriage. However, Husband provided the trial court with no account statements or other evidence to supports his calculations, or his presumed rate of return. And Husband offered no evidence of the amount of contributions made to the account during the marriage as to permit the trial court to determine how much of the account's $255,085.62 value was attributable to growth in the account since the marriage. Without corroborating evidence, we cannot say that the trial court abused its discretion when it found the non-marital portion of the TSP account to be limited to the account balance at the time of the marriage. In effect, the trial court found that Husband failed to rebut by clear and convincing evidence the presumption that the increase in value of the account after the marriage was marital property. *See Kelly*, 340 S.W.3d at 680 (holding that a

20

husband failed to meet his burden of proving by clear and convincing evidence that an identifiable portion of a TSP account was separate property.).

Point Four is denied.

## Point Five

Husband's fifth point on appeal argues the trial court erred in awarding Wife attorneys' fees pursuant to section 452.355.1. Husband asserts that Wife had already been awarded attorneys' fees as a sanction during discovery and that Husband's conduct during trial did not warrant an award for any additional fees incurred by Wife.

"The legislature [has] granted the [trial] court broad authority to award attorneys['] fees to either party in a dissolution proceeding." *Kelly*, 340 S.W.3d at 680. Section 452.355.1 provides:

> [T]he court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

"The trial court is considered an expert as to the necessity, reasonableness, and value of attorneys' fees and thus, the trial court's decision is presumptively correct." *Kelly*, 340 S.W.3d at 680 (quotation omitted). "We will only reverse an award of attorney[s'] fees when the award is so arbitrary and unreasonable as to indicate indifference or a lack of consideration in the trial court." *Id.* (quotation omitted).

Here, prior to trial, the trial court ordered sanctions of $1,080 in attorneys' fees for Husband's failure to abide by a court order requiring Husband to afford Wife's appraiser

21

access to the marital home.  In the Amended Judgment, the trial court ordered Husband to pay Wife an additional $5,000 in attorneys' fees after finding that "[Husband] repeatedly delayed and obfuscated the discovery process and unnecessarily prolonged the trial of the case, thereby substantially increasing [Wife's] fees and expenses."  Husband argues that the trial court's award of $5,000 in fees was duplicative of the earlier sanction, and lacked substantial evidence that Husband's conduct during the pendency of the action warranted an additional award of fees.  We disagree.

Though the trial court awarded sanctions in the amount of $1,080 in Wife's attorneys' fees on July 10, 2017, that was solely in connection with Husband's refusal to permit Wife's appraiser to have access to the marital home as ordered by the trial court.  There was substantial evidence to support the court's award of additional attorney's fees based on Husband's other actions during the pendency of the action.  Wife testified to Husband's noncompliance with discovery requests in addition to the incident involving the appraiser.  Wife testified that while Husband's earlier sanction of $1,080 had been applied to reduce her outstanding attorneys' fees, she still owed $11,426.  Wife submitted evidence of her remaining attorneys' fees and testified that if Husband had been more compliant during discovery, the amount outstanding would be less.  In addition, as is discussed, *supra*, Husband's conduct on the first day of trial led to the trial being suspended for several days.  "Viewing the court's actions in a light most favorable to the judgment, it can be inferred that the court believed that actions attributable to Husband caused the fees and expenses to be higher than would normally be the case."  *Long v. Long*, 135 S.W.3d 538, 545 (Mo.

22

App. S.D. 2004) (quotation omitted).  The trial court did not abuse its discretion when it awarded Wife attorney's fees of $5,000 as permitted by Section 452.355.1.

Point Five is denied.

## Conclusion

The trial court's Amended Judgment is affirmed.


_____
Cynthia L. Martin, Judge


All concur